F I L E D

AUG 2 9 2016

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Darrell Deon Harrison,          )
          Petitioner,          )
                               )
v.                             )          1:16cv266 (LMB/TCB)
                               )
Harold W. Clarke,              )
          Respondent.          )

<u>MEMORANDUM OPINION</u>

Darrell Deon Harrison ("Harrison" or "petitioner"), a Virginia inmate proceeding <u>pro se</u>,

has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the

constitutionality of his robbery conviction entered after a jury trial in the Circuit Court for the

City of Richmond.  On May 9, 2016, respondent filed a Motion to Dismiss and Rule 5 Answer,

along with a supporting brief and exhibits.  Petitioner was given the opportunity to file

responsive materials, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local

Rule 7K, and after receiving an extension of time petitioner filed a response.   For the reasons

that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed

with prejudice.

**I. Background**

The record reflects the following.  Petitioner is detained pursuant to a final judgment of

the Circuit Court of the City of Richmond, entered February 12, 2013.  Motion to Dismiss at Ex.

1.  Pursuant to a jury trial, petitioner was convicted of robbery, in violation of Virginia Code §

18.2-58, and found not guilty of use of a firearm in the commission of a felony.  <u>Id.</u>  Petitioner

was sentenced to ten years imprisonment, with no years suspended.

Petitioner pursued a direct appeal to the Court of Appeals of Virginia, arguing that the evidence presented at trial was insufficient to sustain his conviction. Id. The Court of Appeals of Virginia denied the appeal and the Supreme Court of Virginia subsequently refused his petition for appeal. Id.

The facts established at trial were that, on January 18, 2012, Fatima Stokes ("Stokes") and Jonathan Hardesty ("Hardesty") were working as bank tellers at a Wells Fargo branch. October 12, 2012 Trial Tr at 52-53, 57. A man dressed in a long, dark brown fur coat with a matching hat, white tennis shoes, and what appeared to be a Louis Vuitton purse, sunglasses, and pink lipstick, approached Stokes at her window and stated that he wanted to make a withdrawal. Id. at 53-54, 56, 89. When Stokes turned to hand him a withdrawal slip she saw a note in her window that read "this is a bank robbery and I have a gun." Id. at 53. Stokes gave the man all the money in her top drawer, which he put in his purse and then walked out of the building. Id. at 56. During the robbery, Stokes was only able to see the face of the robber from the nose down. Id. at 78-79. When Stokes was first asked to describe the robber, she did not mention that he was wearing a hat, did not describe the shoes he was wearing, and stated that he was wearing big, dark sunglasses. Id. at 71-72. Hardesty was two teller windows down from Stokes at the time of the robbery. Id. at 88. He initially described the robber as wearing clear reading glasses, which he admitted at trial was incorrect, black leather shoes, although he later testified petitioner was wearing white tennis shoes, and a black fur coat, which he described at trial as "brownish." Id. at 97-99. He told the police after the robbery that he was 90 percent sure that petitioner was the robber based on a photo lineup. Id. at 95. At trial both Stokes and Hardesty identified petitioner as the robber. Id. at 58, 92.

2

At the time of the robbery, petitioner was living with his ex-wife, Theodora Thomas ("Thomas"). Id. at 105.  Thomas testified that, before the robbery, she came home one day in January 2012 to find that her room was in disarray and that her Dooney & Bourke purse, long black mink coat, necklace, and skirt were missing. Id. at 107-09.  Thomas testified that when she saw the video of the Wells Fargo bank robbery she recognized the robber as petitioner who was wearing her missing belongings and carrying her missing purse. Id. at111-12.  Thomas called the police and identified petitioner as the robber, after which the police searched her home on January 25 or 26, 2012. Id. at 112-13, 120.  The police did not find any fur coat, fur hat, or purse; however, they found a pair of white tennis shoes. Id. at 113, 120.  After the search, Thomas spoke with petitioner who stated that he would get Thomas her belongings. Id. at 116.  Petitioner asked Thomas to state that the items were not hers. Id. at 117.  When Thomas moved out of her house in March 2012, she found her fur coat and her skirt in the room petitioner had been occupying. Id. at 113.  Thomas told the police about the fur coat but did not mention it to petitioner's counsel when they met. Id. at 115, 125.  Thomas brought the coat to trial and identified the coat as hers; however, only a photograph of the coat was submitted into evidence. Id. at 114-15.

Before his trial, petitioner was incarcerated with David White. Id. at 128.  White testified at trial that petitioner told him he was "the guy they got on the news about dressing as a woman robbing that bank." Id. at 129.  Petitioner also told White that he hid the bags under his eyes by wearing large sunglasses and that one of the bank tellers could tell that he was not a woman based on the way he walked. Id.  Finally, petitioner told White that he was trying to get in touch

3

with "Cootie," which is Thomas' childhood nickname, regarding "certain female clothing." Id.

at 126. 131.

After pursuing his direct appeal, petitioner timely filed a petition for a writ of habeas

corpus in the Supreme Court of Virginia on March 6, 2015.  Motion to Dismiss at Ex. 2.  The

Supreme Court of Virginia dismissed the habeas petition by order dated November 23, 2015.  Id.

at Ex. 6.

On March 3, 2016, petitioner filed the instant federal petition, wherein he challenges his

conviction on eight allegations of ineffective assistance of counsel.[1]  Specifically, he alleges that

his counsel failed to:

> 1. Challenge the reliability of the out-of-court identifications of petitioner as the robber.
>
> 2. Move to suppress Thomas' out-of-court identification of petitioner as the robber.
>
> 3. Challenge White's testimony and motivation for testifying.
>
> 4. Object to the admission of the picture of the fur coat, rather than the actual fur coat, as both were inadmissible because they were not disclosed by the prosecution prior to trial, and failed to object and move for a mistrial.[2]
>
> 5. Subpoena Detective Robert Albright or any of the investigators involved.[3]
>
> 6. Request a jury instruction on the unreliability of eyewitness identifications.
>
> 7. Challenge the sufficiency of the evidence as to petitioner's identity.

---

[1] Petitioner articulates his claims in the body of the petition.  Dkt. No. 1.

[2] Respondent separates petitioner's fourth claim into two separate claims – one asserting ineffective assistance of counsel and the other alleging prosecutorial misconduct.  The Court finds that petitioner's fourth claim is only a claim for ineffective assistance of counsel.

[3] Respondents argue that part of claim four and all of claim five should be deemed simultaneously exhausted and defaulted; however, the Court will decide these claims on the merits pursuant to 28 U.S.C. 2254(b)(2) which allows a writ of habeas corpus to be "denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

8. Challenge the reliability of the in-court identifications of petitioner as the robber.

See Dkt. No. 1.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

5

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Importantly, this standard of reasonableness is an objective one, and does not allow a federal court to review simply for plain error. Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  In addition, a federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly determined the legal standard. See Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (internal citations omitted).  A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### III. Analysis

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-pronged test established in Strickland v. Washington, 455 U.S. 668 (1984).  Under this test, a petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial. Strickland, 466 U.S. at 687.  To meet the second prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  The two prongs, deficient performance and prejudice, constitute "separate and distinct elements."

6

Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994).  Therefore, a court can appropriately

dismiss an ineffective assistance of counsel claim on either prong.  Strickland, 466 U.S. at 697;

see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of

both deficient performance and prejudice to the defendant, we concluded it could not be said that

the sentence or conviction resulted from a breakdown in the adversary process that rendered the

result of the proceeding unreliable, and the sentence or conviction should stand").  A court

reviewing a claim of ineffective assistance of counsel must presume that counsel acted

competently, and should determine the merits of the claim based on the information available to

the attorney at the time of the trial.  See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208

F.3d 172, 189 (4th Cir. 2000).

## A. Claims One, Two, and Eight

Petitioner's arguments for Claims One, Two, and Eight focus on the inadequacy of

counsel's treatment of the in-court and out-of-court identifications of petitioner as the robber,

and counsel's failure to move to suppress Stokes' and Hardesty's in-court identifications as well

as Thomas' out-of-court identification.

Specifically, as to Stokes, petitioner asserts in Claim One that Stokes' out-of-court

identification was unreliable because she testified that she could only see the robber's face from

the chin down and she identified the purse carried by the robber as a Louis Vuitton purse even

though Thomas testified that the purse was her Dooney & Bourke purse.  Petitioner also argues

that Stokes was unable to identify him as the robber from a photo lineup soon after the robbery.

In Claim Eight, petitioner argues that counsel should have moved to suppress Stokes' in-court

identification because Stokes was unable to write a description of the robber on the date and time

7

of the offense, failed to identify petitioner as the robber from a photo lineup soon after the

robbery, failed to mention that the robber was wearing a hat, gave inconsistent testimony as to

petitioner's identification at the preliminary hearing, and stated that she could only identify

petitioner as the robber according to how he walked into the courtroom even though she testified

that she only saw the robber briefly as he exited the building.

As to Hardesty's out-of-court identification, petitioner argues in Claim One that the

identification was unreliable because Hardesty's teller window was two windows down from

where the robbery occurred and he was servicing another client when the robbery occurred.

Petitioner also argues that Hardesty initially stated that the robber was wearing clear eyeglasses

rather than sunglasses, told the police that the robber was in his twenties even though petitioner

was 46 years old at the time of the robbery, and was not 100 percent sure petitioner was the

robber based on a photo lineup soon after the robbery, even though he testified at trial that he

was 100 percent certain that petitioner was the robber.  In Claim Eight, petitioner asserts that

counsel should have moved to suppress Hardesty's in-court identification because Hardesty gave

inconsistent testimony as to petitioner's identification at the preliminary hearing, could not write

a description of the robber at the date and time of the offense, could not positively identify

petitioner as the robber based on a photo lineup soon after the robbery, initially stated that the

robber was wearing clear eyeglasses rather than sunglasses, and described the robber as being a

dark skinned black male that was 6 feet, 2 inches tall even though petitioner has a fair

complexion and is 5 feet 11 inches tall.

As to Thomas' out-of-court identification, petitioner claims in Count One that the

identification was unreliable because Thomas was not present during the robbery, rather, she

only watched a video of the robbery, and that the items she claims were stolen did not match the descriptions of the items given by eyewitnesses. For example, Hardesty stated the fur coat was brown, not black, and Stokes stated the purse was a Louis Vuitton purse, not a Dooney & Bourke purse. In Claim Two, petitioner asserts that counsel should have moved to suppressed Thomas' testimony, for the same reasons stated in Claim One, as well as because Thomas did not mention that her hat was missing, she only identified her clothes in the video of the robbery, she did not positively identify petitioner, and there was no evidence that the clothing worn by the robber belonged to Thomas.

Finally, in Claim One, petitioner argues that all the identifications were unreliable because Detective Albright, the lead investigator, influenced the identification of petitioner as the robber. Specifically, Detective Albright had developed petitioner as the robber before the photo lineups and told the Richmond City Magistrate that petitioner was identified as the robber when that was not the case. Petitioner asserts that, had counsel conducted a proper pretrial investigation, she would have been able to challenge Stokes' and Hardesty's out-of-court identifications and moved to suppress Thomas' out-of-court identification as well as Stokes' and Hardesty's in-court identifications.

The Supreme Court of Virginia determined that these arguments failed to satisfy either prong of the Strickland test, finding that petitioner "fail[ed] to articulate any grounds upon which counsel could have argued the identification procedures used by the police were unduly suggestive." The court also held that, based on Thomas' testimony regarding her missing items, viewing the video of the robbery, and recognizing petitioner wearing her clothing, "[c]ounsel could reasonably have determined any argument that Thomas' identification of petitioner was

9

made pursuant to an unduly suggestive procedure or that it was inherently unreliable would have been futile." Thus, the state habeas court concluded that petitioner "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different."

The state habeas court's determination that petitioner failed to show his trial counsel was deficient or that he was prejudiced by his trial counsel's failure to challenge or move to suppress the identifications, is neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest on an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference.

The record also shows that counsel questioned both Stokes and Hardesty about what they saw during the robbery as well as the information they first provided the police describing the robber, inconsistencies between their descriptions and the video, and identifications they made during the photo lineups. Thus, petitioner has not shown that counsel's performance was deficient. Accordingly, Claims One, Two and Eight will be dismissed.

### B. Claim Three

Petitioner contends that trial counsel was ineffective for failing to challenge White's testimony and motivation for testifying. Petitioner alleges that White was promised by the prosecutor that his current sentence would be modified if he testified against petitioner. Additionally, petitioner states that White admitted to assisting the Commonwealth on ten prior occasions and that, even though one or two of his prior charges had been discharged, he never received consideration for his assistance. Petitioner also alleges that his conviction was obtained through the use of White's false testimony and that the prosecutor knew this; however, petitioner

also argues that White's testimony was a recitation of petitioner's summary of the preliminary hearing.   Petitioner asserts that, had counsel conducted a proper pre-trial investigation, she would have discovered White's motivation for testifying and could have let the jury know.

The state habeas court determined that petitioner "fail[ed] to provide any support for his allegation that White testified falsely" and that the record showed that "counsel vigorously cross-examined White about his motive for testifying against petitioner." Thus, the Supreme Court of Virginia held that petitioner "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." This finding is neither contrary to, nor an unreasonable application of, existing federal law and Supreme Court precedent. It also does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference, and Claim Three will be dismissed.

### C. Claim Four

Petitioner asserts that his counsel was ineffective in failing to object to the admission of the photograph of the fur coat because the prosecutor did not disclose this evidence before trial, the coat was never in police custody, it is unclear how Thomas found the coat after the police searched the petitioner's room, and there is no evidence that petitioner ever had possession of the coat or that Thomas' coat was the one worn by the robber.

The state habeas court found that petitioner had failed to satisfy either prong of the Strickland test because petitioner "failed to articulate any grounds upon which counsel could reasonably have argued the coat was subject to disclosure because it was exculpatory or that it was discoverable...." The state habeas court's determinations that petitioner failed to show trial

counsel was deficient or that he was prejudiced by trial counsel's failure to object to the admission of the photograph of the fur coat, are neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference.

In addition, Thomas testified that her coat was missing and that she recognized the coat worn by the robber as her missing coat. She also identified the robber in the video as petitioner. She further testified that she found her coat in petitioner's room approximately two months after the robbery. Based on Thomas' testimony it was not unreasonable for counsel to make the tactical decision to not oppose admission of the photograph. Accordingly, Claim Four will be dismissed.

### D. Claim Five

Petitioner claims that he was denied effective assistance of counsel when counsel failed to subpoena Detective Robert Albright or any of the investigators involved. Plaintiff argues that Detective Albright's testimony would have provided information about his investigation of the robbery, and would have been useful to impeach Thomas' testimony about the clothing, and to prove that the in-court identifications of petitioner were so "suggestive and unreliable as to violate due process."

The state habeas court dismissed this argument about Detective Albright because "counsel could reasonably have determined the coat and skirt had been returned to Thomas' home after Detective Albright searched it and that it would not be helpful to petitioner's case to call the detective as a witness." Therefore, the state habeas court found that petitioner failed to

satisfy either prong of the <u>Strickland</u> test, a decision neither contrary to, nor an unreasonable application of, existing federal law.  Accordingly, the state habeas court's ruling is entitled to deference.

Petitioner's claims that his counsel was ineffective because Detective Albright's testimony would have provided information about the investigation of the robbery and would have proved that the in-court identifications were suggestive and unreliable do not meet either prong of the <u>Strickland</u> test.  Petitioner's counsel asked each witness about their role in the investigation and petitioner makes no allegation regarding how Detective Albright's testimony would have provided different information.  In addition, petitioner makes nothing more than conclusory allegations that Detective Albright's testimony would have proved that the in-court identifications violated petitioner's right to due process.  Thus, petitioner has not shown that his counsel's performance was deficient or that he was prejudiced by his counsel's failure to subpoena Detective Albright, or any of the other investigators.  Accordingly, Claim Five will be dismissed.

### E. Claim Six

Plaintiff argues that he was denied effective assistance of counsel when counsel failed to request a jury instruction on the reliability of eyewitness identification.  Petitioner argues that eyewitness identification is prejudicial, and the jury should have been informed of its inherent unreliability.  Plaintiff maintains that if his counsel had given the jury instructions regarding cross-racial identification as well as the law regarding the reliability of eyewitness identifications, the jury may have doubted the identifications of petitioner as the robber.

The state habeas court found that the jury instructions "included instructions on the burden of proof, inconsistent statements, and the witnesses' credibility" which "told the jury they could consider the circumstances of the witnesses' observations and any prior inconsistent statements made by the witnesses." Thus, the court held that petitioner failed to satisfy either prong of the <u>Strickland</u> test regarding this claim because

> [c]ounsel could reasonably have determined the instructions were sufficient, particularly given the opportunity of the jury to see the robber for themselves and to compare the robber to the victim's descriptions and to petitioner's appearance, and that any additional instruction on eyewitness identification would not have been helpful to petitioner.

The state habeas court's determinations that petitioner failed to show that trial counsel was deficient or that he was prejudiced by trial counsel's failure to request a jury instruction on the reliability of eyewitness identification, are neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim Six will be dismissed.

**F. Claim Seven**

Petitioner argues that he was denied effective assistance of counsel because counsel failed to challenge the sufficiency of the evidence as to petitioner's identity. Plaintiff states that his counsel did not properly cross examine the witnesses about their inability to see the robber's face and that the robber was in full disguise. Petitioner claims that Stokes and Hardesty could not identify the bank robber at the time and Stokes was unable to pick petitioner out of a photo lineup. Petitioner also asserts that Thomas never saw the robber, rather, she only saw a video of

14

someone wearing what she thought were her clothes.  Therefore, petitioner argues, counsel had all the information necessary to expose the faults in the identifications.

The state habeas court found that petitioner failed to meet either prong of the Strickland test because "counsel moved to strike at the conclusion of the Commonwealth's evidence and again at the conclusion of the evidence and argued vigorously that the evidence was insufficient to prove petitioner's identity as the robber and that the identification testimony of the Commonwealth's witnesses should not be believed."

This determination is neither contrary to, nor an unreasonable application of, existing federal law.  Additionally, the state habeas court's determination does not rest upon an unreasonable finding of fact.  Accordingly, the state habeas court's ruling is entitled to deference and Claim Seven will be dismissed.

### VI. Conclusion

Nothing in the state court record indicates that the state court decisions were either contrary to, or an unreasonable application of, clearly established federal law, nor did those decisions involve an unreasonable determination of the facts.  Additionally, petitioner failed to demonstrate that his counsel's performance was deficient or that he was prejudiced by his counsel's actions.  Accordingly, this petition will be dismissed with prejudice by an Order to be issued with this Memorandum Opinion.

Entered this __29th__ day of __August__ 2016.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

15